# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| IN RE: ) | CHAPTER 11 |
| ) | |
| CONTROLLED POWER ) | CASE NO. 05-60383 |
| CORPORATION OF OHIO, ) | (Jointly Administered) |
| Debtor. ) | |
| ) | ADV. NO. 05-6176 |
| OFFICIAL COMMITTEE OF ) | |
| UNSECURED CREDITORS OF ) | JUDGE RUSS KENDIG |
| CONTROLLED POWER ) | |
| CORPORATION OF OHIO, ) | |
| Plaintiff, ) | |
| ) | **MEMORANDUM OF OPINION** |
| v. ) | **(WRITTEN OPINION)** |
| ) | |
| CAROMAN FINANCE ) | |
| ACCOUNT, INC., ) | |
| Defendant. ) | |

  Defendant Caroman Finance Account, Inc. (hereafter "Caroman") filed a motion for summary judgment on April 13, 2006. Following an approved extension of time, Plaintiff filed a response on May 5, 2006, to which Defendant replied. The pleadings are now before the court for decision.

  The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and the general order of reference entered in this district on July 16, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(F). Venue is appropriate under 28 U.S.C. § 1409. The following constitutes the court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

## BACKGROUND AND FACTS

  Plaintiff commenced this adversary proceeding on October 15, 2005. Through the complaint, Plaintiff seeks to recover alleged preferential transfers made by Debtor[1] to Defendant prior to Debtor's bankruptcy filing on January 28, 2005.

  Prior to the bankruptcy filing, Debtor experienced cash flow shortages following

---

[1] "Debtor" refers to both debtors in this jointly administered case: Controlled Power Corporation of Ohio (hereafter "Controlled Power") and National Precision Fabricators Corporation (hereafter "National Precision").

nonpayment on two major accounts receivable, resulting in the inability to meet payroll expenses. Caroman and Debtor reached an agreement whereby Caroman would make short-term loans to the Debtor to cover the cash flow shortage. Debtor, in turn, would repay the loans from its next available receivable(s). The agreement was not memorialized. The following transfers were made from Caroman to Debtor in accordance with the parties' agreement:

| | |
|---|---|
| March 26, 2004 | $ 150,000.00 |
| May 7, 2004 | 150,000.00 |
| August 31, 2004 | 100,000.00 |
| September 20, 2004 | 50,000.00 |

Debtor repaid Caroman the following amounts:

| | |
|---|---|
| April 5, 2004 | $ 150,000.00 |
| April 16, 2004 | 271.23 (interest) |
| May 12, 2004 | 150,000.00 |
| September 7, 2004 | 100,000.00 |
| September 21, 2004 | 50,000.00 |
| October 19, 2004 | 292.47 (interest) |

The transfers were made more than ninety days, but less than one year, prior to Debtor's bankruptcy filing.

## ARGUMENTS

In its motion for summary judgment, Defendant argues that it is not an insider. Caroman claims that it did not have sufficient control over Debtor to be considered an insider because it could not set policy or direct the disposition of assets. According to Defendant, if it is not an insider, and the transfers were made more than ninety days prior to filing the case, Plaintiff has failed to prove a preferential transfer. Alternatively, Defendant raises two defenses to preference actions under 11 U.S.C. 547: the ordinary course of business defense set forth in section 547(c)(2) and the contemporaneous exchange defense set forth in section 547(c)(1). With regard to the ordinary course defense, Defendant states that short-term loans to cover payroll expenses are within the ordinary course of business for Caroman and Controlled Power and for the industry. Finally, Defendant argues the debts were repaid no more than ten days following the loan and therefore were contemporaneous exchanges of new value protected under 11 U.S.C. § 547(c)(1).

Plaintiff contends that the loan repayments made by Debtor to Caroman are avoidable preferences under 11 U.S.C. §§ 547 and 550. According to Plaintiff, Caroman is an insider of the Debtor because Caroman was a "person in control of the debtor" under the statutory definition of insider. Alternatively, Plaintiff argues that Caroman's relationship was close enough to Debtor to qualify Caroman as a "non-statutory" insider.

Regardless of which theory is used, Plaintiff posits that Caroman was an insider, so the preference review period is one year, not ninety days. With regard to Defendant's "ordinary course of business" defense, Plaintiff contends that the lack of similar transactions prior to the preference period negates any possibility of finding that the loans were within the ordinary course of business between the parties. Plaintiff also argues that the transfers were not contemporaneous exchanges for new value because, although the loans may have been repaid within days, the parties did not intend that the "loans and their repayment would occur contemporaneously, *i.e.*, at the same time." Pl.'s Resp. to Mot. Summ. J. 16.

## LAW AND ANALYSIS

### I. Standard of review

The procedure for granting summary judgment is found in Federal Rule of Civil Procedure 56(c), made applicable to this proceeding through Federal Rule of Bankruptcy Procedure 7056, which provides in part:

> [t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c).

The evidence must be viewed in the light most favorable to the nonmoving party. Adickes v. S.H.Kress & Co., 398 U.S. 144, 158-59 (1970). Summary judgment is not appropriate if a material dispute exists over the facts, "that is, if evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is appropriate, however, if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); *see also* Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986).

### II. Preferences in general

In order to effectuate a fair distribution of assets among creditors, and to prevent prebankruptcy pillaging of a debtor as well as a debtor's proclivity to favor particular creditors, the bankruptcy code discourages preferential transfers. Through section 547, a trustee is empowered to avoid preferential transfers:

> (1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made --

    (A) on or within 90 days before the date of the filing of the petition; or
    (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if--

    (A) the case were a case under chapter 7 of this title;
    (B) the transfer had not been made; and
    (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(a). Condensed, a party seeking to prove a preference must demonstrate that the transfer was (1) to benefit a creditor; (2) on account of antecedent debt; (3) made while the debtor was insolvent; (4) made within the applicable preference period; and (5) enabled the creditor to receive a larger share of the estate than the creditor would otherwise receive. *See* In re Carled, Inc., 91 F.3d 811 (6th Cir. 1996) (citing Union Bank v. Wolas, 502 U.S. 151, 155 (1991)).

In accordance with 11 U.S.C. § 547(g), Plaintiff bears "the burden of proving the avoidability of the transfer under subsection (b) of this section." Each element must be proved by a preponderance of the evidence. *See, e.g.,* Hunter v. Dupuis (In re Dupuis), 265 B.R. 878 (Bankr. N.D. Ohio 2001). The burden of proving the applicability of a defense under subsection (c) is charged to the transferor/defendant. 11 U.S.C. § 547(g).

### III. Insider status

In its complaint, Plaintiff contends that four transfers to Defendant, dated April 5, 2004, May 12, 2004, September 7, 2004 and October 19, 2004, qualify as preferential payments. In its motion for summary judgment, Defendant presents an argument with regard to the fourth element only.

Element four requires proof that the transfer was made within the applicable preference period. The general preference period, for arm's length creditors, is ninety days. 11 U.S.C. § 547(a)(4)(A). Since the transfers at issue were all made more than ninety days prior to the bankruptcy filing, Plaintiff must prove that Caroman was an "insider" and therefore subject to a one year preference period. Caroman's motion for summary judgment is premised on the argument that it is not an insider.

Insider is a defined term in the bankruptcy code. As set forth in section 101(31)(B), an insider includes:

> (B) if the debtor is a corporation--
>
>   (i) director of the debtor;
>   (ii) officer of the debtor;
>   (iii) person[2] in control of the debtor;
>   (iv) partnership in which the debtor is a general partner;
>   (v) general partner of the debtor; or
>   (vi) relative of a general partner, director, officer, or person in control of the debtor . . . .

The list is not exhaustive, and non-listed entities may be found to be "non-statutory" insiders. *See, e.g.,* Rieser v. Milford (In re Chari), 276 B.R. 206 (Bankr. S.D. Ohio 2002) (citations omitted); Hirsch v. Tarricone (In re Tarricone), 286 B.R. 256 (Bankr S.D.N.Y. 2002) (citations omitted)). The determination of whether a person or entity is an insider is generally a question of fact and is reviewed on a case-by-case basis. *See, e.g.,* In re Tarricone, 286 B.R. at 262 (citations omitted); Cimino v. Writer Corp. (In re Polk), 125 B.R. 293, 296 (Bankr. D. Col. 1991) (citations omitted)).

Legislative history reveals that an "insider is an entity or person with a sufficiently close relationship with the debtor that his conduct is made subject to closer scrutiny than those dealing at arm's length with the debtor." Polk, 125 B.R. at 296 (citing S.Rep. No. 95-989, 95th Cong.2d Sess., reprinted in U.S. Code Cong. & Admin.News, pp. 5787,5810); Wilson v. Huffman (In re Missionary Baptist Found. of America, Inc.), 712 F.2d 206, 210 (5th Cir. 1983)). "A creditor who does not deal at arms length with the debtor, but who has a special relationship with the debtor through which it can compel payment of its debt, has sufficient control over the debtor to be deemed an insider." K & R Mining, Inc. v. Keffler Construction Co. (In re K & R. Mining, Inc.), 103 B.R. 136 (Bankr. N.D. Ohio 1988) (citing In re F & S Central Manufacturing Corp., 53 B.R. 842, 848 (Bankr. E.D.N.Y. 1985) (citations omitted)). The focus of the analysis is the degree to which another party has the ability to influence the exercise of financial and other business decisions within the debtor. *See, e.g.,* Congrove v. McDonald's Corp. (In re Congrove), 330 B.R. 880 (B.A.P. 6th Cir. 2005) (unpublished); Limor v. Buerger (In re Del-Met Corp.), 322 B.R. 781 (Bankr. M.D. Tenn. 2005) (citing Estes v. N & D Props., Inc. (In re N & D Props., Inc.), 799 F.2d 726 (11th Cir. 1986)); In re Missionary Baptist Found. of Am., Inc., 712 F.2d 206). Some specific factors which have been identified in the analysis include "whether the creditor had more ability to assert control than the other creditors, whether the creditor made management decisions for the debtor, directed work performance, and directed payment of the debtor's expenses." Meeks v. The Bank of Rison (In re Armstrong), 231 B.R. 746, 749 (Bank. E.D. Ark. 1999) (citing ABC Elec.

---

[2] The definition of person "includes individual, partnership, and corporation, but does not include governmental unit . . . ." 11 U.S.C. § 101(41).

Serv. Inc. v. Roundout Elec. Inc. (In re ABC Elec. Serv. Inc.), 190 B.R. 672 (Bankr. M.D. Fla. 1995)).

An affidavit, attached as an exhibit to Defendant's motion for summary judgment, declares that Caroman was "not a director of Controlled Power, an officer of Controlled Power, a person in control of Controlled Power, a partnership in which Controlled Power was a general partner, a general partner of controlled power, or a relative of a general partner, director, officer, or person in control of Controlled Power." Plaintiff refutes these statements by presenting interrogatory responses which indicate an overlap of directors and officers between Caroman and Controlled Power. Viewing the facts in the light most favorable to Plaintiff, however, it is clear Caroman was not a director, officer, partnership, general partner, or a relative of any of these entities. The question then becomes whether Caroman was a "person in control of the debtor" or a non-statutory insider of Debtor.

A.    **Statutory insider - "person in control"**

As outlined in the statement of facts, Caroman advanced $450,000.00 to Controlled Power to help Controlled Power cover payroll expenses. Although Caroman advanced a total of $450,000.00, because of the loan repayments the largest amount outstanding at any period in time was $150,000.00. All of the loans made by Caroman were fully repaid by Debtor, as well as a small amount of interest. The time frame for repayment varied from one day to ten days. There are no writings formalizing the parties' agreement or terms of the loans in question. According to Defendant's answers to interrogatories, from January 28, 2003 through January 28, 2005, Caroman did not make any short-term loans to any other entity.

At the time the transfers were made, there was an overlap in management of Defendant and Debtor. As contained in the answers to interrogatories and exhibits, the following were associated with both Caroman and Debtor at the time the transfers occurred:

| Person | Affiliation with Caroman | Affiliation with Debtors |
|---|---|---|
| Carl Sorenson | President; Director; Carl S. Sorenson 2003 Irrevocable Short Term Trust held 33.33% of shares | Director- Controlled Power |

| Lee J. Dicola | Treasurer | Director and Secretary/Treasurer of National Precision; Director and Secretary/Treasurer of Controlled Power |
|---|---|---|
| Norman E. Jackson | Chairman; Director; Norman E. Jackson 2003 Irrevocable Short Term Trust held 33.34% of shares | Director of National Precision; Director of Controlled Power |

It is evident that there was a close relationship between the parties, particularly in light of Lee J. Dicola's positions within both companies. The nature of the inquiry, however, must center on whether Caroman had a controlling relationship with Debtor.

According to the evidence presented, Caroman did not have an ownership interest in the Debtor. Seventy-two percent of National Precision was owned by FinCom Corporation; FinCom Corporation owned 57.7% of Controlled Power. Def.'s Reply to Mot. Summ. J., Exh. A. None of the owners of Caroman are identified as having an ownership interest in any of the Debtors. Thus, if Caroman did have control, it was not a result of an ownership interest in Debtor. The answers to the interrogatories indicate that, at the time of the transfers, National Precision Fabricators Corporation had seven directors and Controlled Power Corporation of Ohio had ten directors. Def.'s Reply to Mot. Summ. J., Exh. A. Two of the seven directors of National Precision and three of ten of the directors Controlled Power were affiliated with Caroman, which is short of a majority to be in a position to dictate corporate policy.

Plaintiff proves the reverse of what it needs to prove. Plaintiff establishes that all of the directors of Caroman were interested in Debtor, whereas a small minority of the directors of Debtor were interested in Caroman. This arguably caused Caroman to make a low or no profit loan with no documentation and exposed it to risk. Debtor received a fantastic deal with no risk. The creditors of Caroman would have a wonderful argument were it in bankruptcy. It is not. The creditors of Debtor have no complaint. There is zero evidence of control. The only evidence is that there was a transaction that was favorable to Debtor that was concluded as agreed.

A lack of "meaningful control over any corporate affair" was fatal to the trustee's claims in Hunter v. Babcock (In re Babcock Dairy Co. Of Ohio, Inc.). 70 B.R. 662, 668 (Bankr. N.D. Ohio 1986). In Babcock, the debtor sold his dairy farm but stayed on as an employee, working with accounts receivable and customers. In spite of his former ownership, his knowledge, and his status as an employee, the court determined that he was not an insider because he could not dictate corporate decisions. In this case, the facts lead to the same conclusion. As a result, the court concludes that Defendant was not a

"person in control" of debtor. Remaining is the question whether Defendant is a "non-statutory" insider.

B.  **Non-Statutory Insider**

Plaintiff's argument suggests that a non-arm's length transaction is dispositive of non-statutory insider status, citing Yoppolo v. Lindecamp (In re Fox), 277 B.R. 740, 744 (Bankr. N.D. Ohio 2002). Upon review of Fox, the court disagrees. Whether the transaction is arm's length is the starting point for the analysis. As the Fox court pointed out, "whether a transaction was conducted at arm's length is not, for "insider" purposes, completely dispositive of the issue." Fox, 277 B.R. at 745 (citations omitted). The court went on to state "[i]n determining the closeness of a transferee's relationship with a debtor, the essential question is not how well the parties know each other, but instead, the degree to which the transferee is able to exert a significant amount of control or influence over the debtor . . . [and whether] the transferee had the power to pressure the debtor so as to have its debt paid at the expense of a debtor's other creditors." Id. (citing Hunter v. Dupuis (In re Dupuis), 265 B.R. 878, 885 (Bankr. N.D. Ohio 2001); In re Kong, 196 B.R. 167, 171 (N.D. Ca. 1996)). Thus, the test is similar the "person in control" test for statutory insiders.

Plaintiff has failed to identify specific facts which indicate Defendant wielded power to compel or force repayment of the debt. Instead, Plaintiff presumably contends that the aggregate of facts infer a finding. The facts on which it relies are summarized in the following paragraph:

> [a]ll of the loans made to CPC by Caroman were (i) unsecured, (ii) made at time [sic] when the principals of Caroman were well aware of the Debtors financial difficulties (indeed, those financial difficulties gave rise to the need for the loans in the first place), (iii) made without any written agreement and (iv) critically, were fully repaid by CPC with interest, all the while [sic] other creditors who did not share common officers and directors with the Debtors went unpaid.

Pl.'s Response to Mot. Summ. J. 8. Plaintiff has failed to identify any means Defendant had to force Debtor to repay the debt. The mere fact that the debt was repaid is not enough. All of the evidence, as set forth in the affidavit of Lee J. DiCola, is uncontroverted. None of the facts in the affidavit bear the indicia of control or pressure. There was an agreement for short term payroll loans to be repaid from the next available receivable. The mere existence of a transaction that was helpful to the Debtor and which was concluded as agreed does not prove meaningful control. Finding such would be the sort of hypertechnical twisting that brings the bankruptcy system into disrepute.

While the facts do support the conclusion that Caroman was privy to more information than other creditors, there is no evidence to support a finding that this

information placed Caroman in a position to dictate Debtor's corporate policy or financial decisions to drive repayment of its debt. In <u>Armstrong</u>, the defendant bank had knowledge of a debtor's check-kiting scheme and took action, *e.g.* holding checks and putting debtor on a "good fund" policy, based on the information. In spite of this, the court found that debtor was not an insider. The driving force in the court's decision was that debtor still controlled all of his financial decisions. <u>Armstrong</u>, 231 B.R. 746 (other citations omitted).

Although Lee J. Dicola was a treasurer in both organizations, no evidence has suggested that he took any improper actions or used his positions in an improper manner or outside the scope of his authority. "Financial power alone does not render a creditor an insider." <u>Armstrong</u>, 231 B.R. at 749 (citing <u>In re Vinard</u>, 133 B.R. 217, 220 (Bankr. S.D. Ind. 1991)). Plaintiff has failed to demonstrate that debtor was not exercising its own business decisions and the court cannot conclude that knowledge, coupled with a loan and subsequent repayment, can qualify a creditor as a non-statutory insider.

To extend this case past summary judgment would wholly undermine the stated public policy of encouraging transactions with troubled entities. It would establish a new public policy: Any person willing to deal with financially troubled entitles should be prepared to be punished by a legal system bereft of logic.

## **CONCLUSION**

Viewing the facts in the light most favorable to Plaintiff, there is no evidence that Caroman had, or exerted, a controlling influence on Debtor or could compel or force repayment of its loans. The record is devoid of any facts which indicate Caroman exercised or exerted control or influence which compelled Debtor to repay the loans. The lack of evidence on this point is fatal, and the court concludes that Defendant was not an insider. Defendant's motion for summary judgment is granted and a separate order shall issue forthwith.

/s/ Russ Kendig
Judge Russ Kendig
U.S. Bankruptcy Judge   SEP -8 2006

**Service List:**

Jeffrey M. Levinson
Leah M. Caplan
Margulies & Levinson LLP
30100 Chagrin Blvd.
Suite 250
Pepper Pike, OH 44124

Sam O. Simmerman
Gregory D. Swope
Krugliak, Wilkins, Griffiths & Dougherty
4775 Munson St., N.W.
P.O. Box 36963
Canton, OH 44718